# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CARLA KAY CLARK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 11-1331-JWL** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.    Background**

Plaintiff applied for SSD on September 24, 2009, alleging disability beginning December 2, 2005.  (R. 15, 126-27).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 15, 63-64, 88).  Plaintiff's request was granted, and Plaintiff appeared with

counsel for a hearing before ALJ Michael A. Lehr on October 20, 2010.  (R. 15, 29-62).

At the hearing, testimony was taken from Plaintiff and from a vocational expert.  Id.  On

December 9, 2010, ALJ Lehr issued his decision finding that although Plaintiff is unable

to perform any past relevant work, when considering her age, education, work experience,

and the residual functional capacity (RFC) assessed, there are other jobs existing in

significant numbers in the economy that Plaintiff is able to perform.  (R. 15-27).

Therefore, he determined that Plaintiff is not disabled within the meaning of the Act, and

denied her applications.  (R. 27-28).

Plaintiff sought Appeals Council review of the ALJ's decision, and submitted a

Representative's Brief and additional medical evidence to the Council.  (R. 5-11, 262-69,

1214-1338).  The Appeals Council made the Representative's Brief and the additional

medical evidence a part of the administrative record and considered that information, but

found no basis to change the ALJ's decision, found no reason under the Social Security

Administration rules to review the decision, and denied Plaintiff's request for review.  (R.

1-4).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1);

Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review

of that decision. (Doc. 1).

## II.   Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

2

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period

3

of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting

identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and

1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not

only unable to perform her past relevant work, but cannot, considering her age, education,

and work experience, engage in any other substantial gainful work existing in the national

economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. § 404.1520 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing

Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be

made at any of the steps that a claimant is or is not disabled, evaluation under a

subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at

1084).  In the first three steps, the Commissioner determines whether claimant has

engaged in substantial gainful activity since the alleged onset, whether she has a severe

impairment(s), and whether the severity of her impairment(s) meets or equals the severity

of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses

claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and

step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining whether claimant can perform past relevant work; and whether, considering

vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in his credibility determination and at step three of the sequential evaluation process by failing to find that Plaintiff's condition meets or medically equals the severity of Listing 1.04 (Disorders of the Spine) or Listing 12.04 (Affective Disorders).  (Pl. Br. 13-22).  She also complains that "as a threshold matter, the Wichita, Kansas SSA Office of Disability Adjudication and Review ("ODAR") continues to improperly apply Listing 1.04 concerning spinal evaluations thereunder.  ALJ Lehr specifically refused to consider plaintiff's back impairment under Listing 1.04."  Id. at 2. The Commissioner argues that the ALJ evaluated Plaintiff's spinal disorder under Listing 1.04, and evaluated it properly, properly evaluated her mental impairment under Listing 12.04, and made a proper credibility finding which is supported by substantial record evidence.  (Comm'r Br. 5-24).  The court agrees with the Commissioner, and will address each issue in the order addressed in Plaintiff's Brief.  Because the "threshold matter" of applying Listing 1.04 relates to Plaintiff's argument that the ALJ erred in failing to find that Listing 1.04 is met or equaled, the court will address those issues together.

### III.   Step Three Evaluation

Plaintiff's allegations of error in failing to find that her condition meets or equals a Listing are allegations of step three error.  The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling.  20 C.F.R. § 404.1525(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  At step three, if plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see also, Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"  Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).  The listings "streamlin[e] the decision process by identifying those claimants whose

medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

### A.    Listing 1.04, "Disorders of the Spine"

Plaintiff argues that the ALJ refused to consider her back impairment under Listing 1.04 because her impairment was not in the list of impairments he noted for that Listing. (Pl. Br. 2-3). Plaintiff points out that the regulations recognize that Listing 1.04 severity might be caused by "other miscellaneous conditions" beyond the list of potential causes included in parentheses in the introductory paragraph of the Listing. Id. at 14. She argues that after surgical repair of a herniated disc she does not need to show a new or recurrent herniation for the criteria of Listing 1.04 to be considered, and she concludes that the ALJ deprived her of her day in court and of her right to a step three analysis of her chronic pain when he "summarily and incorrectly assum[ed] that plaintiff could not be evaluated under Listing 1.04." (Pl. Br. 14). She argues that she has a history of muscle spasm, and "a very significant medical history of [ ] chronic pain," id. at 15, and that the evidence in the record and presented at the hearing "establishes that plaintiff is disabled from pain." Id. at 16. She asserts that her allegations of pain are consistent with her spinal impairments and her history of back surgeries, that the "medical evidence is uncontroverted that the claimant's pain and limitation of motion are very disabling," and

that there is no basis in the record to "completely discount[ ] plaintiff's chronic pain referring to it as [merely] 'alleged.'" Id. at 17.

The Commissioner argues that the ALJ properly evaluated Plaintiff's spinal disorder (degenerative disc disease), and that he did so under Listing 1.04.  (Comm'r Br. 5-6).  He argues that the ALJ properly found that paragraph A of the Listing is not met because there is no evidence of nerve root compression characterized by neuro-anatomical distribution of pain, limitations of motion of the spine, motor loss accompanied by sensory or reflex loss, or positive straight leg raises, and that the record evidence supports the ALJ's finding.  Id. at 6.  He argues that the record does not contain evidence of spinal arachnoiditis or lumbar spinal stenosis as required to meet paragraphs B or C of the Listing.  Id. at 7.  Finally, he argues that the criteria of Listing 1.04 cannot be met merely on the basis of Plaintiff's testimony at the hearing.  Id.

The ALJ explained his step three analysis of Listing 1.04:

The claimant's impairment of degenerative disc disease does not meet
Listing 1.04 because she does not have one of the listed disorders (herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture resulting in a compromise of the nerve root or spinal cord) **in conjunction with** evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, in connection with the lumbar spine impairment, also a positive straight leg raising test (sitting and supine).  In the present case, the claimant has not presented evidence of nerve root compression or other findings that would satisfy the criteria of listing 1.04.

(R. 18-19) (emphasis in original).

Although Plaintiff reads this explanation to state that the ALJ found Listing 1.04 is not met because Plaintiff does not have one of the listed disorders, the phrase emphasized by the ALJ reveals that he found Plaintiff has a listed disorder but the Listing is not met because that disorder is not "in conjunction with" the other required criteria of the Listing.  In the second sentence, the ALJ explained that the Listing is not met because Plaintiff has not shown evidence of nerve root compression or of the other criteria of the Listing.  Regardless of whether Listing 1.04 might be caused by other miscellaneous conditions beyond the listed disorders, the decision cannot be read to suggest that the ALJ found Plaintiff does not have one of the listed disorders.  One of the listed disorders is "degenerative disc disease," and as the Commissioner points out, earlier in his decision the ALJ found that Plaintiff has severe impairments including degenerative disc disease. (R. 18) (finding number 3).

Consideration of the specific text of Listing 1.04 reveals the problems with Plaintiff's arguments.

> 1.04 <u>Disorders of the spine</u> (<u>e.g.</u>, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1.

The only evidence to which Plaintiff cites in support of her assertion that the ALJ should have found her condition meets Listing 1.04 is: muscle spasm, a significant medical history of chronic pain, three back operations, and limitation of motion. (Pl. Br. 15-17). Leaving aside for the moment the ALJ's determination that Plaintiff's allegations of pain are not credible, the court will accept Plaintiff's allegation of pain for the purpose of considering Listing 1.04. Nonetheless, Plaintiff has not met her step three burden to show that her impairments meet <u>all</u> of the specified medical criteria in Listing 1.04. The ALJ specifically found that Plaintiff has presented no evidence of nerve root compression, Plaintiff does not take issue with that finding, and the record evidence supports it. Listing 1.04A is not met because it requires, at least, evidence of nerve root compression (among other criteria). Even assuming Plaintiff has severe burning or painful dysesthesia resulting in the need for changes in position or posture more than once every 2 hours, she cannot meet Listing 1.04B because there is no operative note, pathology report of tissue biopsy, or appropriate imaging confirming spinal arachnoiditis. Moreover, even assuming Plaintiff has pseudoclaudication manifested by chronic

10

nonradicular pain and weakness, Listing 1.04C is not met because Plaintiff points to no lumbar spinal stenosis or inability to ambulate effectively as defined in 20 C.F.R., Pt. 404, Subpt. P, § 1.00B2b.

Finally, Plaintiff has not shown that her condition is medically equivalent to Listing 1.04.  Medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).  Plaintiff makes no attempt to point to evidence tending to establish that her condition is equal in severity and duration to each of the criteria for any one of the Listings at 1.04, and the court sees none.

## B.   Listing 12.04 "Affective Disorders"

With regard to Listing 12.04, Plaintiff argues that her treating counselor, a licensed social worker, Ms. Brown, provided an opinion which, if accepted, would require a finding that Plaintiff's condition meets Listing 12.04.  (Pl. Br. 18).  She asserts that Ms. Brown was supervised by a psychiatrist, Dr. Shah who also treated Plaintiff, and argues that the ALJ failed to give either controlling or persuasive weight to Ms Brown's opinion, and thereby erroneously substituted his lay opinion for the expert opinion of the counselor.  Id.  The Commissioner argues that the ALJ properly accorded little weight to Ms. Brown's opinion and that substantial record evidence supports that determination. (Comm'r Br. 8-13).  He points out that Ms. Brown is not an acceptable medical source within the meaning of the regulations, that she is not a treating source, and that as such, her opinion is not worthy of controlling weight and is not entitled to any special weight.

11

Id. at 13-14.  He argues that there is no evidence Dr. Shah was Ms. Brown's supervising physician, and that contrary to Plaintiff's assertion that Ms Brown's opinion was "unrebutted medical evidence," the record contains the medical opinions of a nontreating psychologist and of two nonexamining psychologists which are contrary to the opinion of Ms. Brown.  Id. at 14-15.

As the parties make clear, if it was proper for the ALJ to discount Ms. Brown's opinion, then it was proper for him to find that Plaintiff's condition does not meet or medically equal Listing 12.04.  If it was not, the case must be remanded for a proper consideration of whether Listing 12.04 is met or medically equaled.  Therefore, the court must determine whether the ALJ properly considered and evaluated Ms. Brown's opinion.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2).  Such acceptable medical source[1] opinions may not be ignored, and unless a treating source opinion is given controlling weight, all medical

---

[1]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. § 404.1527(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2012).

Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. § 404.1527(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2012) ("Giving Controlling Weight to Treating Source Medical Opinions").

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse practitioners, physician's assistants, social workers, and therapists, the Commissioner promulgated Social Security Ruling (SSR) 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2012).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id.  Rulings, 330-31.

SSR 06-3p explains that such "other" medical source opinions will be evaluated using the same regulatory factors used in evaluating medical opinions.  Id. at 331-32 (citing 20 C.F.R. § 404.1527).  That ruling explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  Id. at 333; see also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007) (remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

14

The ALJ provided a thorough summary of the treatment for Plaintiff's mental impairments, and an explanation of the weight given to the opinions regarding those mental impairments:

> The claimant has been diagnosed with an affective disorder, involving both depressive and anxious tendencies. The claimant testified that she did not experience symptoms of a mental impairment until 2008. This is consistent with the medical record, which documents no such complaints until that time. The claimant [sic] initial mental symptoms involved confusion and difficulty with speech beginning in January 2008 (Exhibit 7F, p.32, 34 [(R. 409, 411)]). However, this was attributed to medication interactions, and, after her medication was changed in February 2008, these symptoms did not reoccur, according to the medical record.

> Then in late 2008, the claimant reported some anxiety and complained that her mood was "off" (Exhibit 7F, p.35 [(R. 412)]). Then, in May 2009, the claimant began counseling with Behavioral Medicine Specialists (Exhibit 9F [(R. 440-45)]). She initially complained only of overeating, insomnia, low self-esteem, and poor concentration, and she was assigned a global assessment of functioning (GAF) score of 61, consistent with only mild symptoms according to the DSM-IV (Exhibit 9F, p.4 [(R. 443)]). By June, the claimant indicated these mild symptoms had decreased, with less anxiety and depression, and she subsequently cancelled or failed to show up for a series of appointments, indicating she was not have [sic] symptoms significant enough to prompt her to seek treatment (Exhibit 9F, p.1-3 [(R. 440-42)]). A brief worsening of symptoms was then noted, but this appears situational, in response to her daughters ceasing contact with her, and the claimant was noted to improve again by October 2009 (Exhibit 9F, p.1 [(R. 440)]; Exhibit 11F, p.1 [(R. 449)]).

> In addition, the undersigned notes that there is evidence of two hospitalizations for suicide attempts. In February 2008, the claimant attempted to overdose on Ambien (Exhibit 26F, p.4 [(R. 1134)]). The claimant was hospitalized for less than two days, and there is no evidence she was transferred to the psychiatric department for treatment, indicating that the claimant likely did not appear in need of such care at that time (Exhibit 12F, p.1 [(R. 465)]). Then in September 2009, the claimant attempted to overdose on muscle relaxants (Exhibit 26F [(R. 1131-1206)]). She was hospitalized for only four days, at the request of her counselor, and

15

was released with no evidence of suicidal ideation (Exhibit 26F, p.5 [(R. 1135)]).

While there is evidence of occurrences of moderate to severe symptoms, these appear to constitute brief, and relatively rare, periods rather than the claimant's every-day level of functioning.  The claimant's treatment notes focus on her relationship with her daughters and spouse, coping with her alleged chronic back pain, and refraining from drinking.  Few significant symptoms are noted and the claimant herself reports few, if any, limitations associated with this condition.  Nevertheless, as discussed in the "paragraph B" criteria, the claimant does have some difficulty with social functioning, which warrants a limitation on working with the general public, as described in the residual functional capacity.

An opinion was provided by Molly Allen, Psy.D., based on her consultative examination of the claimant (Exhibit 12F, p.3 [(R. 467)]).  Her opinion indicates the claimant is able to engage in, at least, simple unskilled work.  She also indicated the claimant may have trouble with concentration due to pain but should be able to work with others and take direction from supervisors. This is consistent with the longitudinal record, as discussed above, including Dr. Allen's findings during her examination.  As a result, the undersigned gives this opinion significant weight.

Carol L. Adams, Psy.D., and George W. Stern, Ph.D., both reviewed the record on behalf of the State Disability Determination Service and provided opinions in this case (Exhibits 15F, 19F [(R. 492-95, 541)]).  They indicated that the claimant would have moderate difficulty carrying out detailed instructions and maintaining attention and concentration.  However, a moderate limitation does not indicate the claimant is unable to perform these functions, and the claimant herself reported no such difficulty in this area.  As a result, the undersigned gives this opinion only some weight in determining the residual functional capacity in this case.

Two opinions were provided by Ruby S. Brown, the counselor who saw the claimant at Behavioral Medicine Specialists (Exhibit 24F, 25F [(R. 1122-30)]).  Ms. Brown indicated the claimant's mental impairment meets the listing; however, [(1)] this is inconsistent with Ms. Brown's treatment notes.  As discussed above, the claimant's treatment notes indicate generally mild and controlled symptoms with a few brief periods of worsening symptoms.  However, Ms. Brown indicated the claimant has extreme limitations in activities of daily living and social functioning with

16

frequent deficiencies in concentration, persistence, or pace and repeated episodes of decompensation.  Such limitations appear to describe someone barely able to function in society, [(2)] yet this is markedly different from the reports contained in Ms. Brown's notes.  Furthermore, Ms. Brown indicated the claimant has a number of marked functional limitations, including the ability to maintain attention and concentration for short and extended periods, work in coordination with or proximity to others without being distracted by them, make simple work related decisions, complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and accept instructions and respond appropriately to criticism from supervisors.  However, [(3)] there is little evidence in Ms. Brown's treatment notes to suggest such limitations, and these limitations are [(4)] contradicted by other evidence of record, including the claimant's function reports and the opinion of the consultative examiner.  These opinions are also [(5)] contradictory-despite indicating extreme difficulties in social functioning, Ms. Brown noted only one marked limitation in social functioning.  As a result, the undersigned gives these opinions little weight.

(R. 24-26) (numbering added in last paragraph to indicate the ALJ's reasons for discounting Ms. Brown's "other medical source" opinion).

As Plaintiff admits, Ms. Brown is a Licensed Clinical Social Worker.  (Pl. Br. 18). As such, she is not an "acceptable medical source" and therefore, cannot be a treating source, her opinion is not a "medical opinion," and her opinion cannot be accorded controlling weight.  SSR 06-03p, West's Soc. Sec. Reporting Serv., Rulings 329 (Supp. 2012) (citing 20 C.F.R. §§ 404.1527(a)(2), 404.1502, 404.1527(d)).  Therefore, it would have been error for the ALJ to have accorded "controlling weight" to Ms. Brown's opinion as Plaintiff suggests.

As the Commissioner points out, Ms. Brown's opinion is not "unrebutted medical evidence" but the medical opinions of Dr. Allen, Dr. Adams, and Dr. Stern, and Ms.

17

Brown's own treatment notes constitute medical evidence upon which the ALJ relied to

discount Ms. Brown's opinion.  Plaintiff's argument that Dr. Shah was Ms. Brown's

supervising physician and was a treating source who supported Ms. Brown's opinion is

not supported by the record.  Foremost, Plaintiff does not cite to any record evidence in

support of these arguments.  Moreover, as the Commissioner points out the record

evidence does not reveal any affiliation between Dr. Shah and Ms. Brown, and Ms.

Brown's opinion contains a space for a "Supervising Physician" signature which is blank.

(R. 1127).  The court is unable to find any evidence in the record where Dr. Shah stated

an opinion that Plaintiff is unable to work.  The closest indication in that regard is the

GAF score of 50 Dr. Shah assigned to Plaintiff on her discharge from the hospital after

her second suicide attempt.  (R. 1134).  While the court recognizes that a GAF score of

$50^2$ or less suggests an inability to keep a job, it also recognizes that:

> Standing alone, a low GAF score does not necessarily evidence an
> impairment seriously interfering with a claimant's ability to work.  The
> claimant's impairment, for example, might lie solely within the social,
> rather than the occupational, sphere.

Lee v. Barnhart, 117 F.App'x. 674, 678 (10th Cir. 2004) (citation omitted).  Moreover,

Dr. Shah provided no explanation for the GAF score other than any inference which

might be drawn from the fact that Plaintiff had recently attempted suicide.  However, the

---

[2]GAF scores in the range of 41-50 indicate "**Serious symptoms** (e.g., suicidal
ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in
social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."
Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-
TR) 34 (4th ed. text revision 2000) (emphasis in original).

ALJ explained why he did not find Plaintiff's suicide attempts require a finding of disability, and Plaintiff does not allege error in that finding.

The remainder of Plaintiff's argument with respect to Ms. Brown's opinion merely asks the court to reweigh the ALJ's analysis, and the court may not accept the invitation. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.  The ALJ explained his evaluation, substantial evidence supports that determination, and Plaintiff points to no evidence requiring a different finding.  The court finds no error in the evaluation.

## IV.    Credibility

Plaintiff claims that the ALJ cited few facts in support of his credibility determination, that he did not cite inconsistencies in the medical record other than Ms. Brown's notes, and that he did not evaluate Plaintiff's demeanor or work history.  (Pl. Br. 20-21).  She argues that the ALJ "selectively read the evidence" with regard to credibility, and that "[t]here is no basis in the record to support a finding that plaintiff's testimony was not credible."  Id. at 21-22.  The Commissioner argues that substantial record evidence supports the credibility determination.  He argues that a formalistic factor-by-factor recitation of the evidence is not required in a credibility determination, and that the ALJ noted numerous inconsistencies in the record reflecting negatively on Plaintiff's credibility.  (Comm'r Br. 20-23).  He points out that the ALJ noted Plaintiff was released to return to work without restrictions, and that Plaintiff cancelled or was a "no-show" at many appointments.  Id. at 23.  Finally, he points out that Plaintiff did not identify specific factual findings relied upon by the ALJ which were erroneous as Plaintiff alleges,

and that Plaintiff provided no argument beyond his conclusory allegations of error. Id. at 23-24.

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

Here, Plaintiff has shown no reason why the court should not defer to the ALJ's credibility finding. The ALJ provided at least four reasons for finding Plaintiff's allegations are not credible, and with each of those reasons he provided citation to record evidence affirmatively linking the reasons to substantial record evidence. First, he stated that Plaintiff "has reported inconsistent information relevant to this decision," and related specific examples, citing to exhibits 1E, 3E, and 15E in support of this reason. (R. 21-22). He then noted that Plaintiff "has reported symptoms and limitations on her function

20

report that differ from those reported to examining sources," and he related examples of such different reports--citing to exhibits 12E and 12F.  Id. at 22.  He cited to exhibit 7F as containing evidence suggesting the Plaintiff "may be trying to overstate her physical symptoms."  Id.  Finally, he noted that Plaintiff "reported no history of drinking, although her mental health records suggest some history of alcohol abuse."  Id. (citing Ex. 17F).

Plaintiff does not assert that any of these reasons are erroneous, does not assert that the evidence relied upon is incorrect or unreliable, and does not point to specific evidence demonstrating error in the ALJ's rationale.  Moreover, the court's review suggests that the evidence supports the ALJ's reasoning.  As the Commissioner points out Plaintiff's Brief consists of conclusory statements without specific argument or citation to record evidence which precludes the ALJ's credibility finding.  Plaintiff has shown no error in the credibility determination.

The court finds no error in any of Plaintiff's allegations.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 12th day of October 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**